UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
CRYSTAL JACKSON,

                Plaintiff,                                **MEMORANDUM DECISION AND ORDER**

            -against-                                19-CV-4099 (AMD) (RML)

SHERATON NEW YORK TIMES SQUARE
HOTEL,

                Defendant.
-----------------------------------------------------------------x
ANN M. DONNELLY, United States District Judge:

On July 30, 2019, the plaintiff brought this *pro se* action alleging employment discrimination and retaliation by her former employer, defendant Sheraton New York Times Square Hotel. (ECF No. 6.) Before the Court is the defendant's motion for summary judgment. (ECF No. 34.) For the reasons that follow, the defendant's motion is granted.

## BACKGROUND[1]

The plaintiff filed this lawsuit after the defendant, Sheraton New York Times Square Hotel, terminated her from her position as a guest services agent. (Def. 56.1 at ¶ 7.) In 2015, the plaintiff's relationship with a fellow guest services agent, Joannie Acevedo, started to deteriorate. They argued and complained about each other to other employees. (*Id.* at ¶ 9.) Ms. Acevedo "frequently made physical threats of violence towards" the plaintiff, and in 2016 threatened that "her man" was "waiting outside to smack a fat black bitch like [the plaintiff]." (ECF No. 6 at 7-8.) The plaintiff and Ms. Acevedo filed competing complaints against each

---

[1] I have reviewed the entire record in connection with this motion, and construe the facts in the light most favorable to the plaintiff, the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2005).

other with the defendant's human resources department. (ECF No. 37 at ¶ 12.)[2] The plaintiff also lodged a series of informal complaints against Ms. Acevedo from 2015 through 2018, including that Ms. Acevedo made "false claims about [the plaintiff] to management . . . and called her the B word," that Ms. Acevedo was "jeopardizing" the plaintiff's job, and that she was "on face time talking to a man on a tablet" during their shift.[3] (ECF No. 36-6 at 6, 10-12.) The plaintiff also complained about Ms. Acevedo's tardiness and general demeanor. (*Id.*) In November of 2017, the plaintiff circulated a petition to have Ms. Acevedo removed from the night shift at guest services because she created a "hostile environment" that made employees "feel uncomfortable and unsafe in the workplace." (*Id.* at 19.) In February of 2018, the plaintiff "filed a police report against Ms. Acevedo for harassment," and gave a copy of the report to the defendant. (ECF No. 6 at 8.)

On July 7, 2018, the plaintiff and Ms. Acevedo were working in the guest services center, standing approximately three feet apart. (Def. 56.1 at ¶ 14.) The plaintiff asked the director of guest services to change Ms. Acevedo's seat, but Ms. Acevedo did not move. (ECF No. 41 at ¶ 31.) Twice during their shift, Ms. Acevedo tried to hit the plaintiff by "deliberately" pushing a chair in the plaintiff's direction; Ms. Acevedo also bent over "so that her buttocks were close to the Plaintiff's face." (*Id.* at ¶ 33.) The plaintiff later overheard Ms. Acevedo tell a colleague that she was "going to get [the plaintiff's] fat ass fired when I go back to the office." (*Id.*)

---

[2] The plaintiff accused Ms. Acevedo of racial discrimination based on Ms. Acevedo calling the plaintiff a "black bitch." (ECF No. 6 at 7-8.) Ms. Acevedo's complaint alleged "harassment." (ECF No. 37 at ¶ 12.)

[3] The defendant investigated Ms. Acevedo's use of a tablet during the shift, and concluded that Ms. Acevedo violated the hotel's policies regarding the use of personal devices at workstations. (ECF No. 41 at 85.)

2

At around 10 p.m., the plaintiff began "drumming her fingers on her workstation and humming." (Def. 56.1 at ¶ 15.) Ms. Acevedo said, "Stop banging on the desk, fat bitch." (ECF No. 41 at ¶ 33.) After this comment, Ms. Acevedo recorded the rest of the interaction on her cellphone.[4] Ms. Acevedo asked the plaintiff to "please stop" tapping her fingers, to which the plaintiff responded, "Bitch die. Die bitch die. Die right now. Don't fucking say nothing else to me. I'll tell you right now. Say something else to me. Say something else to me. Watch where your ass is going out of here." (ECF No. 36-11.) Ms. Acevedo responded that she just asked the plaintiff to stop the tapping, and that she was sitting at her seat "first." (ECF No. 36-10.) The plaintiff continued to tap her fingers and also started singing, which she continued to do throughout the 26-minute recording. (*Id.*) In addition, the plaintiff said the following to Ms. Acevedo and fellow guest services agents:

- "Don't say nothing to me. Get your ass from over here. You got a problem with it? Get your ass from over here. That's what you do. Don't say shit, idiot."

- "Stupid bitch. Don't say shit to me. Say something else to me. Say something else to me. Say something else to me. One more time. Say something to me. Say something. Stupid ass. Retarded bitch. You shouldn't have sat here anyway. Get the fuck out of here."

- "Yeah, and I can fucking do what I want. What you going to do about it? Get the fuck out of my face, you dumb ass."

- "What the fuck is wrong with you? Say something to me."

- "Y'all hear this girl say something to me? Y'all hear her over here? Minding my business over here. Saying stuff to me when she knows she's not supposed to be

---

[4] The Court has reviewed the entire recording.

3

talking to me . . . . She gotta be outta here because she don't understand. She thinks it's a joke. Some idiots gotta be taught a lesson."

- "Say something else and it's going to get real fucking ugly in here. Real fucking ugly. I'm tired of this fucking retard. Fucking retarded and don't know shit. Don't know no better. Fucking asshole. Say something else to me. Better get the fuck down here. I'm not in the mood for this fucking dummy today. And the next step . . . fucking shit head."

- "You witness that? I called security because this is over her harassing me and they're not coming down. So she says something else to me you'll all be my witnesses. I'm not going to be the one out of a job tonight. Bet and believe that. I'm not. Trust and believe. I've got enough papers to prove I'm not going to lose my job. Trust and believe that. Trust. Trust. I got, I'm not losing nothing about this thing over here. Trust and believe. They act like they can't get rid of her. They're going to find out."

- "I must look like, I don't know, I have 'sucker' written on my forehead, but trust and believe."

(ECF No. 36-10.) At various points in the recording, Ms. Acevedo said, "Ok." (*Id.*) At another point, the plaintiff answered a call from hotel security, and said, "I'm being harassed by someone on my shift. I have a coworker that's not supposed to say things to me." (*Id.*)[5] Ms. Acevedo also spoke with someone from hotel security, and told the plaintiff that security wanted the plaintiff to "go up to the [security] office." The plaintiff responded, "Then they're going to have a problem in here." (*Id.*)

---

[5] The plaintiff had called security earlier in the evening.

4

That evening, Ms. Acevedo filed a complaint with Arnold Milliken, the defendant's security manager, accusing the plaintiff of "workplace harassment, creating a hostile work environment, [and] using vulgar/obscene and unprofessional language with a co-worker in a threatening tone." (ECF No. 36-12 at 1, 5.)[6] Mr. Milliken referred the complaint to Patrick Athy, the director of human resources, for an investigation, and suspended the plaintiff pending the outcome of the investigation. (*Id.* at 3; Def. 56.1 at ¶ 25.)

As part of his investigation, Mr. Athy reviewed the recording from Ms. Acevedo's cellphone, and interviewed other guest services agents, who corroborated "the authenticity and veracity of the recording." (ECF No. 36-12 at 4.) He also reviewed the plaintiff's personnel file, her past complaints against Ms. Acevedo, and Mr. Milliken's report of the statement the plaintiff made after her altercation with Ms. Acevedo. (*Id.* at 3.) In a report finalized on September 27, 2018, Mr. Athy concluded that the plaintiff was "abusive, aggressive and threatening," and that her behavior violated "the hotel's Standards of Conduct prohibiting using obscene, abusive or threatening language or gestures," as well as the hotel's policies on "Workplace Violence, Anti-discrimination, Unwelcome Harassment & Retaliation." (*Id.* at 4-5.)[7] He found that the plaintiff's conduct was "grounds for immediate dismissal," and that the defendant "had just cause to discharge" the plaintiff. (*Id.*)

The plaintiff appealed Mr. Athy's decision, and an impartial arbitrator heard testimony from the plaintiff, Ms. Acevedo, Mr. Athy, and other guest services agents, and reviewed the

---

[6] Around the same time, the plaintiff filed a competing complaint against Ms. Acevedo "alleging mistreatment." (Def. 56.1 at ¶ 31.) The defendant conducted a separate investigation into the plaintiff's allegations, and could not corroborate her complaint. (*Id.*)

[7] The defendant has "a comprehensive anti-harassment policy and complaint procedure . . . [which] prohibits harassment based on any discriminatory reason," and prohibits employees "from engaging in threats and acts of violence against co-workers." (Def. 56.1 at ¶¶ 2-5.) Its Standards of Conduct "prohibits the use of obscene, abusive or threatening language or gestures." (*Id.*)

5

cell phone recording. (ECF No. 36-8.) The arbitrator determined that Ms. Acevedo "did not do or say anything to provoke" the plaintiff during the "six hours" that they worked next to each other. (*Id.* at 5-6.) He also found that the plaintiff's statements "were laced with profanities and included nasty and reprehensible insults," were "made in a menacing tone," and "constituted threats to do physical harm." (*Id.*) Taken as a whole, the arbitrator concluded, the plaintiff's conduct interfered with the defendant's "ability to provide the atmosphere and service expected of it," and was "ground[s] for dismissal." (*Id.*) The plaintiff was officially terminated on October 18, 2018. (ECF No. 37 at ¶ 18.)

The plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission, which dismissed her claim on June 18, 2019. (ECF No. 6 at 13.) On July 12, 2019, the plaintiff filed a complaint in this Court. (ECF No. 1.) On July 18, 2019, I dismissed her complaint for failure to state a claim, and on July 30, 2019, the plaintiff filed an amended complaint. (ECF Nos. 4, 6.) I dismissed the plaintiff's disability discrimination claim on August 22, 2019, but allowed her Title VII claim to proceed. (ECF No. 7.) The defendant moves for summary judgment, claiming that the plaintiff has not established a *prima facie* case of either race discrimination or retaliation. (ECF No. 34.)

## LEGAL STANDARD

Summary judgment is appropriate only if the parties' submissions, including deposition transcripts, affidavits, or other documentation, show that there is "no genuine dispute as to any material fact," and that the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The movant has the "burden of showing the absence of any genuine dispute as to a material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997); *Tsesarskaya v. City of New York*, 843 F.

Supp. 2d 446, 453-54 (S.D.N.Y. 2012) ("While disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment[,] [f]actual disputes that are irrelevant or unnecessary will not be counted." (quoting *Anderson*, 477 U.S. at 248)). "Once the moving party has met this burden, the party opposing summary judgment must identify specific facts and affirmative evidence that contradict those offered by the moving party to demonstrate that there is a genuine issue for trial." *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 349 (E.D.N.Y. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The non-moving party "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998). In deciding whether summary judgment is appropriate, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. *See Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010); *Salomon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 (2d Cir. 2008).

## DISCUSSION

### I. Discrimination

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment" on the basis of the individual's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). Disparate treatment claims under Title VII are analyzed using the *McDonnell Douglas* burden-shifting framework. *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 209-10 (E.D.N.Y. 2014) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973)). Under the framework, the plaintiff must first establish a *prima facie* case

of discrimination. *See id.* Once the plaintiff makes that showing, "the burden of production [shifts] to the employer and require[es] the employer to come forward with its justification for the adverse employment action against the plaintiff." *Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015). If the employer meets this burden, "the presumption 'drops out of the picture'" and the plaintiff must demonstrate that the employer's explanation is pretextual. *Id.* (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)).

To establish a *prima facie* case of discrimination, the plaintiff must show that: (1) she is a member of a protected class; (2) she is qualified for the position; (3) she has suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination. *See McDonnell Douglas Corp.*, 411 U.S. at 802–04 (1973); *Littlejohn*, 795 F.3d at 307. The defendant does not dispute that the plaintiff, an African-American woman, is a member of a protected class. Nor does the defendant deny that the plaintiff was qualified for her position, or that she suffered an adverse employment action when she was terminated. The only disputed issue is whether the defendant fired the plaintiff under circumstances giving rise to an inference of discrimination.

The plaintiff has not established an inference of discrimination. She cites no evidence, and indeed does not claim, that anyone in a supervisory position disparaged her because of her race or made any racially charged statements about her or in her presence. In fact, the plaintiff cites only one incident: that in 2016, two years before the altercation that led to the plaintiff's termination, Ms. Acevedo called her a "fat black bitch." (ECF No. 6 at 7.) That statement, while certainly inappropriate and upsetting, does not raise a plausible inference that the defendant fired the plaintiff because of her membership in a protected class. Rather, that comment, far removed in time and made by a coworker with no authority over the plaintiff, is

the kind of "stray remark" that courts have found insufficient to constitute employment discrimination. *Danzer v. Norden Sys.*, 151 F.3d 50, 56 (2d Cir. 1998). *See also Jowers v. Family Dollar Stores, Inc.*, No. 09-CV-2620, 2010 WL 3528978, at *1 (S.D.N.Y. Aug. 16, 2010), *affd.*, 455 F. App'x 100 (2d Cir. 2012) (noting that the single statement that "black people are lazy and incompetent" one month before the plaintiff's termination was a stray remark insufficient to establish an inference of discrimination on its own); *Maqsood v. Bell Sec., Inc.*, 249 F. App'x 229, 230 (2d Cir. 2007) (summary order) (holding that sporadic comments made two years before the plaintiff's termination did not support a claim under Title VII for discrimination); *Rosenfeld v. Hostos Cmty. Coll.*, No. 10–CV–3081, 2013 WL 1285154, at *5 (S.D.N.Y. Mar. 29, 2013) ("[S]tray remarks, without more, and with no nexus to the adverse employment action in this case, [do] not support . . . an inference" of discrimination).[8]

Because the plaintiff has not established a *prima facie* case, it is unnecessary to undertake the burden shifting analysis. Nevertheless, even if the plaintiff had made out a *prima facie* case, the defendant provides legitimate reasons for its decision to terminate her. As the recording makes clear, the plaintiff cursed at and threatened Ms. Acevedo for almost a half hour. She called her, among other things, an "idiot," a "stupid bitch," and a "dumb ass." The plaintiff also threatened that if Ms. Acevedo said "something else . . . it's going to get real fucking ugly in here. Real fucking ugly . . . fucking asshole. Say something else to me." The plaintiff carried on this way in front of other employees and guests. This behavior was legitimate grounds for termination; it violated the hotel's standards of conduct policies on workplace violence, anti-discrimination, unwelcome harassment and retaliation. *Howell v.*

---

[8] The plaintiff also makes general claims that the defendant treated her and Ms. Acevedo differently because Ms. Acevedo was Hispanic and the plaintiff is black, but there is no evidence of discriminatory treatment in the record.

*Montefiore Med. Ctr.*, 2016 WL 880373, at *6 (S.D.N.Y. Feb. 16, 2016), *aff'd*, 675 F. App'x 74 (2d Cir. 2017) (holding that the employer's determination that the plaintiff had violated the employer's policies constituted a legitimate reason to fire the plaintiff). Significantly, too, the defendant did not fire the plaintiff on the spot, despite the recorded evidence. It was only after a review by the hotel and then a determination by an impartial arbitrator that the plaintiff violated the hotel's policies that the defendant terminated the plaintiff's employment. Under these circumstances, a reasonable juror could conclude that the defendant fired the plaintiff because she violated the defendant's workplace policies. Thus, the defendant has met its burden to articulate a legitimate reason for termination.[9]

Accordingly, the plaintiff's discrimination claim under Title VII is dismissed.

## II. Retaliation

The plaintiff's Title VII retaliation claim is dismissed because she has not shown a causal connection between her participation in a protected activity and her termination. The *McDonnell Douglas* burden-shifting framework also governs retaliation claims. *Bowen-Hooks*, 13 F. Supp. 3d at 220 (citing *Fincher Deposit. Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) ("Retaliation claims made under 42 U.S.C. § 1981, like those made under Title VII, are evaluated using a three-step burden-shifting analysis."). A *prima facie* case of retaliation requires (1) the plaintiff's participation in a protected activity known to the defendant; (2) an adverse employment action; and (3) a causal connection between the protected activity and the adverse employment action. *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (quoting *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012)). Since there was no dispute that the plaintiff was terminated, the plaintiff must establish

---

[9] The plaintiff does not cite any evidence to support a claim of pretext.

that she participated in a protected activity, and that there was a causal connection between this protected activity and her termination.

The plaintiff claims that the defendant fired her because she testified in an unrelated discrimination case against the hotel in 2015, and because she filed a complaint against Ms. Acevedo in 2016 for racial discrimination. (ECF No. 6 at 7-8.) While testifying in a proceeding or hearing pursuant to Title VII, *see* 42 U.S.C. § 2000e–3(a), and filing a complaint with human resources are both protected activities, *see Sumner v. United States Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990), there is no causal connection between either activity and the plaintiff's termination.

"To establish the causation prong of a *prima facie* case, Plaintiff must be able to show that the retaliatory actions 'closely followed,' the protected activity or that there was a 'reasonably close temporal proximity' between the two." *Bowen-Hooks*, 13 F. Supp. 3d at 229 (quoting *Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013)). Though there is no "'bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship' between a protected activity and an allegedly retaliatory action, courts in this circuit have typically measured that gap as a matter of months, not years." *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 131 (2d Cir. 2012) (quoting *Gorman–Bakos v. Cornell Coop. Extension of Schenectady County*, 252 F.3d 545, 554 (2d Cir. 2001) (collecting cases)). While seven months is a reasonable gap, *Summa*, 708 F.3d at 128, the Second Circuit has held that fifteen months, *Woodworth v. Shinseki*, 447 F. App'x 255, 258 (2d Cir. 2011), and two years are too long, *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 447 (2d Cir. 1999) (*abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)).

The plaintiff engaged in protected activity in 2015 and 2016, years before she was terminated in 2018. The plaintiff cites no recent protected activity before her suspension and subsequent termination. The obvious trigger for the suspension was her verbal assault on Ms. Acevedo, which led to the investigation that culminated in her termination three months later.

As explained above, even if the plaintiff had pled a *prima facie* case of retaliation, the defendant has provided a legitimate reason for terminating her. Accordingly, the plaintiff's retaliation claim under Title VII is dismissed.

## CONCLUSION

For the reasons explained above, I grant the defendant's motion for summary judgment on all of the plaintiff's claims. The Clerk of Court is respectfully directed to mail a copy of this order to the *pro se* plaintiff, enter judgment in favor of the defendant and close this case.

**SO ORDERED.**

s/Ann M. Donnelly
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
June 3, 2021